UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KUJALI STRAWTHER,<br><br>Defendant. | 4:22-40133-KES<br><br>ORDER ADOPTING REPORT & RECOMMENDATION AS AMENDED AND DENYING MOTION TO SUPPRESS |

Defendant, Kujali Strawther, is charged with one count of possession of an unregistered machinegun in violation of 26 U.S.C. §§ 5841, 5861(c), and 5871, one count of possession of a machine gun in violation of 18 U.S.C. § 922(o), and one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Docket 19. Strawther moves to suppress all evidence that law enforcement officers located during the search of his vehicle because he argues that officers did not have reasonable suspicion to stop his car. Docket 28. Strawther further argues that officers violated the Fourth Amendment when they extended the stop of his vehicle and performed a search. *Id.* He contends any statements he made are fruit of the poisonous tree. *Id.*

The court referred Strawther's motion to Magistrate Judge Veronica Duffy under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing, Magistrate Judge Duffy recommended denying Strawther's motion to suppress.

Docket 42 at 19; *see also* Docket 30. Strawther filed objections to the Report and Recommendation. Docket 43. After a de novo review of the Report and Recommendation and the record, the court adopts the Report and Recommendation as modified below and denies Strawther's motion to suppress.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 59 of the Federal Rules of Criminal Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

After a de novo review of the transcript of the evidentiary hearing and the exhibits received into evidence, the court makes the following factual findings:

On November 21, 2022, at approximately 2 p.m., Kujali Strawther was driving a rental car eastbound on Interstate 90 (I-90). *See* Docket 36 at 9, 16.

South Dakota Highway Patrol Trooper Eric Peterson and South Dakota Highway Patrol Sergeant Josh Olson were on stationary patrol near mile marker 395 on I-90. *Id.* at 10, 27. Peterson noticed that Strawther's vehicle, a new model white SUV, appeared to be exceeding the posted speed limit of 65 miles per hour and estimated the vehicle's speed to be closer to 80 miles per hour. *Id.* at 10, 12. Peterson then used his radar device on the vehicle which indicated a speed of 74 miles per hour. *Id.* at 12.

Peterson confirmed the speeding violation with Olson and then exited onto I-90 to follow Strawther onto the Marion Road exit. *Id.* at 14. After running a series of pre-stop checks, Peterson turned on his lights approximately at the intersection of North 60th Street and Marion Road. *Id.* Peterson followed Strawther a short distance to West 61st Street where the vehicle came to a stop. *Id.* at 74; *see also* Exhibit C (showing stop location marked with TS by Peterson).

Peterson exited his vehicle and approached the passenger side of Strawther's vehicle. Exhibit 3 at 1:35-45. In the vehicle, he observed Strawther, who was driving, an adult female passenger identified as Ms. Benton, and four children. *See* Docket 36 at 15-16. Peterson asked Strawther for his driver's license and registration. *Id.* at 16. Strawther and the passenger informed Peterson that the vehicle was a rental and showed him the rental agreement. *Id.*; *see also* Docket 33. Peterson told Strawther that he intended to issue a courtesy warning for the speeding violation and asked Strawther to come back to the passenger seat of Peterson's patrol vehicle. Docket 36 at 17-18.

3

Strawther came to the patrol vehicle and sat in the passenger seat. Exhibit 3 at 4:10-25. Peterson and Strawther exchanged small talk while in the vehicle together. *See* Exhibit 5 at 00:13-3:58.[1] Strawther got into Peterson's patrol car at approximately four and a half minutes into the stop. Exhibit 4 at 4:29. Strawther was wearing a high collared shirt and a loose, zipped coat. *Id.*

After Strawther had been sitting and speaking with Peterson for a few minutes, Benton left the SUV and appeared to check on the children in the backseat. Exhibit 3 at 8:05. Peterson informed Strawther that he was going to exit the patrol vehicle to check on the passengers of the SUV and to check the SUV's VIN number. Exhibit 5 at 3:58; Docket 36 at 20. Strawther told Peterson "go ahead." Exhibit 5 at 4:00. Peterson left the patrol vehicle and spoke with Benton. Exhibit 3 at 8:23. Peterson testified that Benton told him that she was changing a diaper for one of the children. Docket 36 at 20. Peterson also testified that he smelled the odor of burnt marijuana while speaking with the passenger. *Id.* at 20-21.

Peterson returned to the patrol vehicle and informed Strawther that he smelled burnt marijuana in the car. Exhibit 5 at 5:30. He asked Strawther whether he had smoked any marijuana. *Id.* at 5:47. Strawther reported that he had smoked marijuana in the vehicle back in California. *Id.* at 6:05. Trooper Peterson testified that he could see Strawther "really open[] his eyes" and

---

[1] Due to technical difficulties in exporting the in-car recordings, the audio and video were submitted to the court separately as Exhibit 4 (video) and Exhibit 5 (audio). *See* Docket 31. The court cites to each exhibit using the time stamps as they appear on the recording.

4

Strawther's "heartbeat begin to pound more underneath his clothing in his stomach, and . . . his bottom lip quivering." Docket 36 at 21.

The Magistrate Judge found Peterson's description of Strawther's physicality in this moment not credible. Docket 42 at 6. She found that Peterson could not have seen Strawther's heartbeat in his stomach through Strawther's positioning and high-collared shirt and loose coat. *Id.* This court reviewed the video evidence and agrees with this finding. Though Strawther was animated during the conversation, the court did not see his lip quiver. Rather, the video demonstrates that Strawther gestured with his hands and that his eyes were wide. Exhibit 4 at 9:45-10:36. His demeanor appeared nervous. *Id.* But the court credits the remainder of Peterson's testimony, as it is corroborated by the video and audio evidence.

Peterson left the patrol vehicle and again spoke to Benton, asking her if she was the one who smoked or possessed marijuana. Docket 36 at 21. She reported that she did not smoke marijuana but that Strawther may have some marijuana in a "sling-type bag." *Id.* Peterson again returned to the patrol vehicle and asked Strawther whether he had a South Dakota medical marijuana card. Exhibit 5 at 8:11. Strawther replied that he did not. *Id.* at 8:13. Peterson informed Strawther that he was going to search the vehicle based on the smell of marijuana. *Id.* at 8:26. Peterson told Strawther that "honesty is the best policy." *Id.* at 9:56. Strawther responded that he had approximately two pounds of marijuana in the back of the car. *Id.* at 10:02-10:14.

Peterson called for assistance for the search. Docket 36 at 23-24. Trooper Dan Hup responded approximately five and a half minutes later, seventeen minutes into the stop. Exhibit 3 at 17:41. Sergeant Olson also arrived at the stop. *See* Exhibit 6 at 3:47. Trooper Hup testified that he smelled the odor of marijuana emanating from the car, though he did not voice that observation at the time of the stop. Docket 36 at 54, 56.

Approximately twenty-one minutes into the stop, the officers began to search the vehicle. Almost immediately, they located three bags of marijuana – totaling 2.13 pounds – located in a duffle bag in the back of the vehicle. Exhibit 3 at 21:17-21:34. No other drug paraphernalia was found in the car. *See* Docket 36 at 56.

Peterson testified that he found a gun in the female passenger's purse that was located on the passenger-side floor. Docket 36 at 24-25. The firearm appeared to be modified to fire like an automatic weapon. *Id.* at 25. Officers then arrested Strawther for possession of a prohibited firearm. *Id.*

## DISCUSSION

Strawther raises two objections to the Report and Recommendations. Docket 43 at 1. First, Strawther objects to the magistrate judge's finding that Trooper Peterson possessed reasonable suspicion to stop Strawther for speeding. *Id.* at 2-3. Second, Strawther objects to the finding that the officers had cause to extend the stop and perform a search of the vehicle. *Id.* at 3-5. The court considers each objection in turn.

### I. Whether Trooper Peterson Possessed Reasonable Suspicion to Stop Strawther for Speeding

The Fourth Amendment of the United States Constitution forbids "unreasonable searches and seizures." "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (citing *Brendlin v. California*, 551 U.S. 249, 255-59 (2007)). The Supreme Court has held that an officer may conduct an investigatory stop "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *See Navarette v. California*, 572 U.S. 393, 396 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "[T]he Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *United States v. Tamayo-Baez*, 820 F.3d 308, 312 (8th Cir. 2016). Courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Adler*, 590 F.3d 581, 583 (8th Cir. 2009) (quoting *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008)).

Strawther argues that "[t]he government has not shown sufficient evidence" that Peterson reasonably believed Strawther "was traveling above the speed limit at the time of the stop." Docket 43 at 2. Strawther points to Peterson's failure to capture the speed readout on his radar device and the

7

delay in Peterson submitting his report to argue that Peterson's memory of Strawther's speed is unreliable. *Id.* at 2-3

But the record contains further reliable indicia of Strawther's speed at the time of the stop. The citation Peterson wrote in response to the stop lists Strawther's speed at 74 miles per hour. Docket 32 at 3. Unlike Peterson's report, the citation was written and dated the same day as the stop. *Id.* Further, the officers can be heard discussing Strawther's speed during the traffic stop, with Peterson stating "I saw [Strawther's speed] was 74." Exhibit 6 at 5:19. This evidence, taken collectively, is sufficient to demonstrate that Peterson had reasonable suspicion to stop Strawther. Strawther's objection is overruled.

**II.     Whether Officers had Cause to Extend the Stop and Perform the Search of his Vehicle**

"Generally, a valid traffic stop becomes an unreasonable seizure if the officers extend the stop beyond the time necessary to complete the stop's mission." *United States v. Allen*, 43 F.4th 901, 907 (8th Cir. 2022).

> A stop may be extended for a length of time sufficient to enable the apprehending officer to ask the driver to step out of the vehicle or wait in the patrol car, to ask about the motorist's destination and purpose, to check the validity of the driver's license and registration, and to check the driver's criminal history for outstanding warrants.

*United States v. Long*, 532 F.3d 791, 796 (8th Cir. 2008). An officer asking an "off-topic question" about the presence of illegal drugs does not violate the Fourth Amendment if the stop is otherwise lawful. *Id.* Additionally, if officers develop reasonable suspicion of criminal activity, they may extend the stop. *Allen*, 43 F.4th at 907. Thus, the question before the court is whether Peterson

8

extended the search of Strawther's vehicle beyond the time necessary to effectuate the purpose of the stop and, if he did, whether the extension was supported by reasonable suspicion of criminal activity. *See id.*

First, Peterson extended the stop. Although initially Peterson did not extend the stop by asking a question about the presence of marijuana in the car, when he begins to question other passengers and decides to search the vehicle, he has surpassed the original purpose of the traffic stop. *Cf. id.* at 908 (officer extended stop when he decided to search vehicle stopped for parking violation). When Peterson begins to ask questions about drug usage or possession and when he decides to search the vehicle, Peterson extends the stop past its original purpose. The extension must therefore be supported by reasonable suspicion.

Second, Peterson had reasonable suspicion to extend the traffic stop. When Peterson returned to the vehicle to check on the passengers, he detected the odor of burnt marijuana. *See* Exhibit 5 at 5:30. Though Strawther disputes Peterson's testimony that he smelled marijuana, the court finds that Peterson's testimony, as corroborated by the video and audio recordings, is credible and that he detected the odor of marijuana. Peterson's testimony is further bolstered by Hup's statement that he smelled marijuana when inspecting the vehicle. Docket 36 at 54.

The odor of marijuana gave rise to reasonable suspicion for Peterson to extend the stop and ask further questions. During this questioning, Peterson learned that Strawther does not have a medical marijuana card. Exhibit 5 at

9

8:11-8:15. Though Strawther states that he only smoked marijuana in the car in California, both Strawther and his passenger eventually admit that there is marijuana in the vehicle. *Id.* at 10:02-10:14; Docket 36 at 21. Because possession of marijuana for recreational use is illegal in South Dakota, Strawther's admissions during the lawful extension of the traffic stop provided Peterson with probable cause to search the vehicle. *See United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020) ("[The Eighth Circuit has] repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception."). Strawther's objection is overruled.

## CONCLUSION

Because there is no constitutional violation, the court declines to suppress any evidence gathered as a result of the traffic stop. The court adopts Magistate Judge Duffy's recommendation as modified and denies Strawther's motion to suppress. Thus, it is

ORDERED that the Report and Recommendation (Docket 42) denying Strawther's motion to suppress is adopted as modified by this opinion. The motion to suppress (Docket 28) is denied.

Dated July 5, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE
